**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

**KELLY LYNN CRISCI,**

      **Plaintiff,**

**vs.**                    **Case No.  1:17cv116-CAS**

**NANCY A. BERRYHILL, Acting**
**Commissioner of the Social**
**Security Administration,**

      **Defendant.**

_____/

## MEMORANDUM OPINION AND ORDER

This Social Security case was referred to the undersigned upon consent of the parties, ECF No. 8, by United States District Judge Mark E. Walker.  ECF No. 9.  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of the Social Security Administration denying Plaintiff's application for a period of disability and Disability Insurance Benefits (DIB) pursuant to Title II of the Social Security Act and Plaintiff's application for Supplemental Security Income (SSI) pursuant to Title XVI of the Act.  *See* ECF No. 1.  After careful consideration of the record, the decision of the Commissioner is affirmed.

## I. Procedural History

On June 26, 2013, Plaintiff Kelly Lynn Crisci filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income. Tr. 202-10, 218.[1] Plaintiff alleged disability beginning June 1, 2012, due to back pain, chronic obstructive pulmonary disease (COPD), anxiety, and depression. Tr. 84, 108, 120, 218-19. The claims were initially denied on November 12, 2013, and again on reconsideration January 21, 2014. Tr. 104-05,108-19. Plaintiff requested a hearing, which was held on January 19, 2016, in Jacksonville, Florida, before Administrative Law Judge (ALJ) Teresa J. McGarry. Tr. 43-78. Plaintiff was represented by attorney Amy Kimble. Plaintiff appeared in person and testified, as did impartial vocational expert Melissa Tanner.

The ALJ issued a decision on February 10, 2016, finding that Plaintiff has not been under a disability as defined in the Social Security Act. Tr. 23-36. The ALJ made the following pertinent findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2017. Tr. 25.

---

[1] Citations to the transcript/administrative record (ECF Nos. 11, 11-1 through 11-12) shall be by the symbol "Tr." followed by a page number that appears in the lower right corner of each page.

2. The claimant has not engaged in substantial gainful activity since June 1, 2012, the alleged onset date.  Tr. 25.

3.  The claimant has the following severe impairments: degenerative disc disease of the lumbar spine; chronic obstructive pulmonary disease (COPD); and anxiety/depression.  Tr. 25.  The ALJ found that Plaintiff's asymptomatic hypertension was a non-severe impairment because it was effectively treated with medication and had no more than a minimal effect on the Plaintiff's functional abilities.  Tr. 25-26

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  Tr. 26.  The ALJ found that based on Plaintiff's recorded $FEV_1$ and FEV values, coupled with her height, her COPD fails to meet or medically equal the listing level impairments of section 3.02 of Appendix 1.  Tr. 26.

5.  After careful consideration of the entire record, the Claimant has the residual functional capacity to perform light work involving lifting/carrying 10 pounds frequently and 20 pounds occasionally; sitting, standing, and walking each for up to 8 hours in the workday; never climbing ropes, ladders, or scaffolds; and limited to occasional climbing of ramps/stairs, and occasional balancing, bending, stooping, squatting, crouching, crawling, and kneeling.  Claimant can use her upper extremities in all ways.  She can see, hear, and talk.  She must avoid heights, extreme temperatures, humidity, dust, odors, chemicals, and fumes.  She should not work directly with the public in a customer service or public relations way.  The claimant can be in the vicinity of co-workers, but not work in tandem with them.  Tr. 28.

6.  The claimant is unable to perform any past relevant work as a retail store manager or cashier checker.  Tr. 34.

7.  The claimant was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  The claimant subsequently changed age category to closely approaching advanced age.  Tr. 34.

8.  The claimant has a limited education and is able to communicate in English.  Tr. 34.

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a

framework supports a finding that the claimant is "not disabled," the claimant has transferable job skills. Tr. 34.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. Tr. 34. The ALJ found that Plaintiff can perform the job of marker, DOT #209.587-034, light, unskilled, SVP of 2, with 319,657 jobs in the national economy; sub assembler, DOT #729.684-054, light, unskilled, SVP of 2, with 9,312 jobs in the national economy; and mail clerk, DOT #209.687-026, light, unskilled, SVP of 2, with 2,489 jobs in the national economy.[2] Tr. 36.

11. The claimant has not been under a disability as defined in the Social Security Act from June 1, 2012, through the date of the decision, February 10, 2016.

Based on these findings, the ALJ found that Plaintiff is not disabled under sections 216(i) and 223(d) of the Social Security Act and is not entitled to disability benefits. Tr. 36. The ALJ also found that Plaintiff is not disabled under section 1614(a)(3)(A)[3] of the Social Security act and is thus not entitled to supplemental security income. *Id.* Plaintiff requested review by the Appeals Council, which was denied on March 8, 2017. Tr. 1-4. Thus, the decision of the ALJ became the final decision of the Commissioner and is ripe for review. Accordingly, Plaintiff, represented by

---

[2] DOT refers to the Dictionary of Occupational Titles (4th Ed., Rev. 1991), which is one of the examples of sources that the ALJ may rely on for job information. *See* SSR 00-4p; 20 C.F.R. § 404.1566(d) and 416.966(d). The ALJ may also rely on a vocational expert or other specialist. *See* § 404.1566(e).

[3] Section 1614(a)(3)(A) of the Social Security Act is codified at 42 U.S.C. § 1382. *See* Higginbotham v. Barnhart, 163 F. App'x 279, 280 n.1 (5th Cir. 2006).

counsel, filed a Complaint for judicial review pursuant to 42 U.S.C.

§ 1383(c)(3) and 42 U.S.C. § 405(g).  ECF No. 1.

## II. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is

supported by substantial evidence in the record and premised upon correct

legal principles.  42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131

(11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less

than a preponderance.  It is such relevant evidence as a reasonable person

would accept as adequate to support a conclusion." Bloodsworth v.

Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord

Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The

Commissioner's factual findings are conclusive if supported by substantial

evidence."[4] Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002)

(citations omitted).  The Court may not decide the facts anew, reweigh the

---

[4] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

evidence, or substitute its judgment for that of the Commissioner,

Bloodsworth, 703 F.2d at 1239, although the Court must scrutinize the

entire record, consider evidence detracting from the evidence on which the

Commissioner relied, and determine the reasonableness of the factual

findings. Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); Parker v.

Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986). Review is deferential, but

the reviewing court conducts what has been referred to as "an independent

review of the record." Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir.

1985).

A disability is defined as a physical or mental impairment of such

severity that the claimant is not only unable to do past relevant work, "but

cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national

economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage

in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not

less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509

(duration requirement). Both the "impairment" and the "inability" must be

expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212

(2002).  In addition, an individual is entitled to disability insurance benefits if

he or she is under a disability prior to the expiration of her insured status.

*See* 42 U.S.C. § 423(a)(1)(A); Moore, 405 F.3d at 1211; Torres v. Sec'y of

Health & Human Servs., 845 F.2d 1136, 1137-38 (1st Cir. 1988); Cruz

Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

Pursuant to 20 C.F.R. § 404.1520(a)(4)(i)-(v),[5] the Commissioner

analyzes a claim in five steps:

1.  Is the individual currently engaged in substantial gainful
activity?

2.  Does the individual have any severe impairments?

3.  Does the individual have any severe impairments that meet
or equal those listed in Appendix 1 of 20 C.F.R. Part 404,
Subpart P?

4.  Does the individual have the residual functional capacity
(RFC) to perform work despite limitations and are there any
impairments which prevent past relevant work?

5.  Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in

disapproval of the application for benefits.  A positive finding at step three

results in approval of the application for benefits.  At step four, the claimant

---

[5] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416).  Therefore, citations herein should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled. If the claimant carries this burden; however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work available in significant numbers in the national economy in light of the claimant's RFC, age, education, and work experience.[6] *See* Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004); Jones v. Apfel, 190 F.3d 1224, 1228-29 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g). If the Commissioner carries this burden, the claimant must prove that he or she

---

[6] Residual functional capacity is the most a claimant can still do despite limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all the relevant evidence including the claimant's description of his or her limitations, observations by treating and examining physicians or other persons, and medical records. *Id.* The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term "*residual functional capacity assessment*" describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.").

cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that she is disabled and, consequently, is responsible for producing evidence in support of his claim. *See* 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211.  The responsibility of weighing the medical evidence and resolving any conflicts in the record rests with the ALJ.  *See* Battle v. Astrue, 243 F. App'x 514, 523 (11th Cir. 2007) (unpublished).

The opinion of the claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); *see* 20 C.F.R. § 404.1527(c)(2).[7]  This is so because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."

---

[7] This provision applies to claims filed before March 27, 2017.  For claims filed after that date, the applicable provision is section 404.1520c, titled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017."

*Id.* "This requires a relationship of both duration and frequency." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).

The reasons for giving little weight to the opinion of the treating physician must be supported by substantial evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated. Phillips, 357 F.3d at 1241. "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor, 786 F.2d at 1053.

The ALJ may discount the treating physician's opinion if good cause exists to do so. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supported a contrary finding," the opinion is "conclusory or inconsistent with [the treating physician's] own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence or is wholly conclusory." Lewis, 125 F.3d at 1440; Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991) (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)). Where a treating physician has merely made

conclusory statements, the ALJ may afford them such weight to the extent they are supported by clinical or laboratory findings and are consistent with other evidence as to a claimant's impairments.  Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

Some opinions on issues such as whether the claimant is unable to work, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case; i.e., that would direct the determination or decision of disability."  20 C.F.R. § 404.1527(d); see Bell v. Bowen, 796 F.2d 1350, 1353-54 (11th Cir. 1986).  "[T]reating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance."  SSR 96-5p, 1996 SSR LEXIS 2, at *6 (1996).  Although physicians' opinions about what a claimant can still do or the claimant's restrictions are relevant evidence, such opinions are not determinative because the ALJ has the responsibility for assessing the claimant's RFC. A treating physician's opinion that a claimant is unable to work and is disabled would not be entitled to any special weight or deference.  The regulations expressly exclude such a disability opinion from the definition of a medical opinion because it is an issue reserved to the Commissioner,

and a medical source is not given "any special significance" with respect to issues reserved to the Commissioner, such as disability. 20 C.F.R. § 404.1527(d)(1), (3); SSR 96-5p, 1996 SSR LEXIS 2, at *6. In <u>Lewis</u>, the court noted "that we are concerned here with the doctors' evaluations of [the claimant's] condition and the medical consequences thereof, not their opinion of the legal consequences of his condition. Our focus is on the objective medical findings made by each doctor and their analysis based on those medical findings." 125 F.3d at 1440.

Generally, more weight is given to the opinion of a specialist "about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(2), (5)[8]; *see also* <u>Benecke v. Barnhart</u>, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (noting that opinions of specialists may be particularly important, and entitled to greater weight than those of other physicians, with respect to certain diseases that are "poorly understood within much of the medical community"); <u>Somogy v. Comm'r of Soc. Sec</u>., 366 F. App'x 56, 65 n.13 (11th Cir. 2010) (unpublished) (same)). Although a claimant may provide a statement containing a treating physician's opinion of her remaining capabilities, the ALJ must evaluate such a statement in light of the other evidence

---

[8] *See* note 7, *supra*.

presented and the ALJ must make the ultimate determination of disability.

20 C.F.R. §§ 404.1512, 404.1513, 404.1527, 404.1545.

## III. Analysis

### A. Whether the ALJ's determination of Plaintiff's RFC is supported by substantial evidence and whether the ALJ failed to reconcile the opinion evidence with the RFC

Plaintiff first contends that the ALJ erred in the RFC determination

that Plaintiff can perform light work involving lifting and carrying 10 pounds

frequently and 20 pounds occasionally; sitting, standing, and walking each

for up to 8 hours in the workday; never climbing ropes, ladders, or

scaffolds; occasional climbing of ramps and stairs, and occasional

balancing, bending, stooping, squatting, crouching, crawling, and kneeling;

using upper extremities in all ways; but must avoid heights, extreme

temperatures, humidity, dust, odors, chemicals, and fumes; must not work

directly with the public in a customer service or public relations way; and

can be in the vicinity of co-workers, but not work in tandem with them.

Tr. 28.  Plaintiff contends that in reaching this determination, the ALJ failed

to reconcile the opinion evidence of Lance Chodosh, M.D., concerning

Plaintiff's ability to sit, stand, and walk during the workday with the RFC determination.[9]  ECF No. 16 at 14.

The ALJ gave substantial weight to the opinion of consultative examiner Dr. Chodosh, who opined in pertinent part that Plaintiff could "stand, walk, sit, stoop, squat, kneel, lift and carry occasionally, handle objects, see, hear, and speak normally."  Tr. 32.  Plaintiff contends that in making this statement, Dr. Chodosh was opining that Plaintiff could stand, walk, and sit only occasionally, which under the Social Security Ruling 83-10 definition of "occasional" is for "very little up to one-third of the time." ECF No. 16 at 16 (citing SSR 83-10, 1983 WL 31251 (Jan. 1, 1983)). Based on this alleged discrepancy between Dr. Chodosh's opinion and the RFC determined by the ALJ, Plaintiff contends that testimony of a vocational expert is necessary to determine if there are jobs that Plaintiff can perform if she is limited to occasional standing, walking, and sitting.

Plaintiff misinterprets the application of the modifier "occasionally" in Dr. Chodosh's opinion.  The word "occasionally" in Dr. Chodosh's opinion described a limitation only on Plaintiff's ability to lift and carry, not Plaintiff's

---

[9] Plaintiff does not challenge, and thus has waived, any claims of error based on the ALJ's evaluation of other medical opinions, or inferences from other medical records.  *See* <u>T.R.C. ex rel. Boyd v. Comm'r of Soc. Sec. Admin.</u>, 533 F. App'x 914, 918 5(11th Cir. 2014) (noting that issues not developed with argument and authority are generally deemed waived) (unpublished); <u>Sanchez v. Comm'r of Soc. Sec.</u>, 507 F. App'x 855, 856 n.1 (11th Cir. 2013) (unpublished).

ability to stand, walk, and sit.[10]  Dr. Chodosh's notes indicate that Plaintiff

had a normal range of motion in her joints, Tr. 421, and had clear lungs, but

with a cough and wheezing.  Tr. 419.  He diagnosed mild to moderate

COPD.  Tr. 422.  His records indicate Plaintiff can stand with normal

balance and has a normal gait.  She can squat and rise, and reports that

she can walk one half block before needing to rest.  She uses an inhaler to

relieve wheezing and chest symptoms.  Tr. 422, 420.

Moreover, in making the RFC assessment, the ALJ relied on the

totality of the medical and other evidence in the record.  Under Social

Security Ruling 96-8p, the RFC assessment "must be based on all of the

relevant evidence in the case record."  SSR 96-8p, 1996 WL 374184 (Jul.

2, 1996).  That evidence includes, but is not limited to, medical history,

signs and laboratory findings, effects of treatment, medical source

statements, recorded observations, reports of daily activities, lay evidence,

and effects of symptoms.  *Id.*

---

[10] Plaintiff further argues that if Plaintiff cannot meet the standing and walking requirements of light work, then the ALJ would have limited her to sedentary work—but such a limitation would mandate a finding of disability because even sedentary work requires sitting for approximately six hours in an eight-hour day.  Plaintiff also contends, based on Plaintiff's limited education and age upon reaching age 50, that she would be limited to unskilled work, which under the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, section 201.10, would dictate a finding of disability.  ECF No. 16 at 17.  Because Plaintiff misinterprets Dr. Chodosh's statement concerning Plaintiff's ability to sit, stand, and walk during a workday, this argument is not applicable and will not be addressed.

The ALJ relied not only on Dr. Chodosh's opinion but also on the physical examinations throughout the record that failed to identify significant musculoskeletal abnormalities or other significant limitations. Tr. 30.  The ALJ explained that records of objective testing revealed only mild to moderate abnormalities; and physical examinations have revealed no significant functional limitations beyond that allowed for in the RFC. Tr. 29.  The ALJ recognized that a February 2010 MRI of the lumbar spine revealed a small right disk protrusion at L2-3, a broad central L3-4 disk protrusion, and a broad L4-5 disk protrusion, but none of these findings resulted in clear neural compression.  Tr. 30 (citing Tr. 583).  The ALJ cited reports that show Plaintiff has a functional range of motion for all joints, normal strength, no evidence of muscle wasting, and no significant motor, sensory, or reflex deficits.  *Id.*  The office notes of treating provider Dr. David Kemp, over a substantial period of time, reflect that physical examination results were normal.  Tr. 30 (citing Tr. 366-400; 433-56; 621). The ALJ noted that Dr. Kemp did not do thorough physical examinations and did not provide detailed notes.  Tr. 30.  The ALJ also cited the lack of medical evidence of diagnostic testing or evaluation for self-reported arthralgia in Plaintiff's hands and the lack of medical documentation of the need for a cane or stick for balance when outside, as is required under

Social Security Ruling 96-9p to find that such an assistive device is medically necessary.  Tr. 30; SSR 96-9p, 1996 WL 374185 (Jul. 2, 1996).

As for the effect of Plaintiff's COPD on her RFC, the ALJ explained that the records from the emergency department reflect that her condition was improved with, and managed by, treatment with inhaler therapy. Tr. 30, 31 (*see* Tr. 331, 338, 494, 510, 511, 523, 525-526, 533, 547, and 554).  The ALJ noted that the fact that Plaintiff has not stopped smoking cigarettes in spite of medical recommendations to do so, while not a basis to deny a finding of disability, suggests that the effects of her breathing impairment were not as severe as alleged.  Tr. 32.  The ALJ also relied on evidence of Plaintiff's activities of daily living, which included living independently within her household, performing light household chores, driving, shopping, caring for pets, attending medical appointments, and other activities.  Tr. 32.

State agency medical consultant Loc Kim Le, M.D., also noted, based on a review of the record and Dr. Chodosh's report, that Plaintiff was capable of standing and/or walking about six hours in a workday and can only occasionally lift 20 pounds.  Tr. 116.  State agency consultants are highly qualified and their opinions may be entitled to great weight if the evidence supports the opinions.  *See* Social Security Ruling 96-6p, 1996

WL 374180 (Jul. 2, 1996); 20 C.F.R. § 404.1527(e)(2)(i) (2016). The ALJ

found that the medical consultants' opinions were consistent with Plaintiff's

history of routine and conservative treatment, adequate response to

treatment, and only mild to moderate abnormalities demonstrated on

pulmonary function testing. Tr. 33.

The ALJ did not give significant weight to the opinions of Dr. Kemp,

who completed multiple medical source statements and reported

restrictions on Plaintiff's abilities that would preclude all work. Tr. 33. In

residual functional capacity questionnaires, Dr. Kemp opined that Plaintiff

would need to take unscheduled breaks every one to two hours for ten to

fifteen minutes at a time, and would likely miss work more than four times a

month. *See, e.g.*, Tr. 424-25; 473-74. He also opined that Plaintiff could sit

and stand/walk for only one hour each in a workday. *Id.* Dr. Kemp did see

Plaintiff numerous times over several years, but his office notes do not

indicate he did thorough physical examinations. His notes focus primarily

on chronic pain for which he prescribed pain medication and anxiety for

which he prescribed medication. *See, e.g.*, Tr. 366-400, 457, 433, 435-

457, 621. He also saw Plaintiff concerning her COPD on a number of

occasions and prescribed medication for that condition. *See, e.g.*, Tr. 366-

69, 378-81, 434, 445, 447, 450-52, 454-56.

The ALJ explained that she did not give significant weight to Dr. Kemp's opinions because he did not perform thorough examinations, and because the general examinations he did perform were consistently reported to be "normal." Tr. 30 (citing examination notes at Tr. 366-84, 390-97; Tr. 400, 433-54, 621).[11] The ALJ further explained that Dr. Kemp opined that Plaintiff had manipulative limitations but noted that the opinion was based on Plaintiff's self-report. Tr. 33 (citing Tr. 425). The ALJ also explained that the totality of the restrictions noted in Dr. Kemp's opinions are not bolstered by his own treating records, which fail to reveal any of the type of significant clinical and laboratory abnormalities one would expect for the stated limitations. Tr. 33. The ALJ found that Dr. Kemp's notes indicated generally that Plaintiff's symptoms responded to the medication prescribed by him. *Id.* The ALJ found that Dr. Kemp's opinions are without support from the other evidence of record, including objective diagnostic test results. *Id.* A review of the entire medical record bears out these conclusions.

Based on the testimony of the impartial vocational expert, after having been provided with a hypothetical question containing certain

---

[11] Dr. Kemp's office notes from one visit, on February 12, 2015, noted the general examination was abnormal, noting very high blood pressure on that day. Tr. 443.

limitations applicable to Plaintiff, the ALJ found that Plaintiff could perform three representative jobs in the national economy: marker, DOT #209.587-034, light unskilled, SVP of 2, with 319,657 jobs in the national economy; sub assembler, DOT #729.684-054, light unskilled, SVP of 2, with 9,312 jobs in the national economy; and mail clerk, DOT #209.687-026, light unskilled, SVP of 2, with 2,489 jobs in the national economy.  Tr. 36, Tr. 73-74.  The vocational expert's testimony was based on a hypothetical question assuming a person could lift and carry 10 pounds frequently and 20 pounds occasionally; sit, stand, and walk each for up to 8 hours in a workday; never climb ropes, ladders, and scaffolds; occasionally climb ramps and stairs; occasionally bend, balance, stoop, squat, crouch, crawl, and kneel; use upper extremities in all ways; see, hear, and talk; must avoid heights, extreme temperatures, humidity, dust, odors, chemicals, and fumes; must not involve working directly with the public in a customer service or public relations way; and can work in the vicinity of coworkers.  Tr. 73-74.  These limitations were incorporated into the RFC found by the ALJ in her decision.  Tr. 28.  Because the RFC was based on substantial evidence, no error has been shown.

Relying on the "totality of the medical evidence of record" and the Plaintiff's activities of daily living, the ALJ found that Plaintiff can sustain

greater capacity for work than was alleged in the application. Tr. 33.

Because the ALJ's findings and her assessment of Plaintiff's RFC were

based on substantial evidence in the record, this issue is without merit.

## B. Whether the ALJ's credibility determination is supported by substantial evidence

Plaintiff next contends that the ALJ erred by failing to provide

legitimate reasons for the credibility determination that Plaintiff's medically

determinable impairments, specifically her COPD,[12] could reasonably be

expected to cause her symptoms, but that Plaintiff's statements concerning

the intensity, persistence, and limiting effects of these symptoms are not

entirely credible. Tr. 29.

Plaintiff testified at the hearing that she had been a convenience

store cashier, then a manager until 2009. Tr. 61. She subsequently acted

as babysitter to a grandchild until 2012. Tr. 57. Plaintiff moved in with her

mother in 2015 because of problems with anxiety. Tr. 59. She testified

that she drives but not very much because her car has a clutch, which is

difficult. Tr. 60. During the day, Plaintiff takes care of her dogs, feeding

them and walking them. She said the walking has been beneficial to her.

---

[12] The ALJ also addressed Plaintiff's other impairments in relation to the credibility determination, but on review in this Court, Plaintiff challenges only the credibility determination concerning the effects of her COPD. *See* ECF No. 16 at 18-22.

Tr. 61. She shops some, but not like she did before, and she mostly stays home. She has stopped going to church because they changed pastors. Tr. 70.

Plaintiff watches television during the day and talks with her mother. She also sews and knits some, and plays electronic Bingo, although it has become more difficult to keep her focus during the game. Tr. 62-63. She cooks a little and helps with the dusting. Tr. 60. She has begun using a cane to walk outdoors to help with balance, although it was not prescribed by a doctor. Tr. 64. Plaintiff testified that she cannot return to cashiering because her fingers hurt all the time, and get red and swollen. Tr. 65. She said she shakes "real bad" and gets emotional. *Id.* She testified that she used to manage five employees but she could no longer do that because she gets upset and confused. Tr. 66. She described getting panic attacks six or seven times a week where she feels like she is suffocating, and has no explanation of the cause. Tr. 67-68. Plaintiff also testified to pain in her neck that also causes numbness in her fingers and hands. Tr. 68. She said her hands are numb when she wakes in the morning and she worries about dropping things. Tr. 69.

The ALJ concluded that the Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely

credible and that, based on the totality of the medical record and her activities of daily living, she can sustain a greater capacity for work than she has alleged.  Tr. 29, 33.  In making this credibility determination concerning the effects of Plaintiff's COPD on her ability to work, the ALJ cited emergency department records that indicated her respiratory condition improved with treatment.  Tr. 30 (*see* Tr. 334, 338, 523, 525-26, 533, 547).  Emergency room records also did not indicate significant abnormalities related to the COPD.  *See, e.g.*, Tr. 331-32, 338, 491-94, 509-12, 510-11, 522-23, 526-27, 533, 547-48, 553-54.  The record contains diagnostic reports indicating that, although Plaintiff has mild to moderate COPD, a chest X-ray in 2012 showed normal lung marking with no infiltrates; and pulse oximetry was normal with a 97% oxygen saturation rate.  Tr. 332, 334, 345.  A chest X-ray in 2014 showed clear lungs, as did a CT scan.  Tr. 528, 533, 539-40.  A 2015 chest X-ray showed no abnormality and the CT scan showed no evidence of central pulmonary embolism.  Tr. 458-60, 496.  Pulse oximetry in 2014 and 2015 consistently showed 96% to 100% oxygen saturation rates.  Tr. 493, 496, 498, 511, 514-15, 526, 529-31, 533, 547, 550-51, 553.

Examiners usually noted that she was not in respiratory distress, that her lungs were clear, and that she had normal breath sounds.  *See, e.g.*,

Tr. 331, 494, 511, 526, 533, 547, 554.  Dr. Chodosh found that Plaintiff had clear lungs with slightly distant breath sounds, and a normal breathing pattern except for a slight but frequent cough.  Tr. 421.

Title 20 C.F.R. § 404.1529 provides in pertinent part that '[t]here must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled."  20 C.F.R. § 404.1529(a).  Where substantial evidence in the record supports a clearly articulated credibility finding, that finding should not be disturbed by a reviewing court.  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995); MacGregor, 786 F.2d at 1054.

The ALJ did not make a broad, unexplained rejection of the credibility of Plaintiff's testimony regarding the intensity, frequency, or persistence of his symptoms, but considered the medical record and Plaintiff's testimony as a whole and explained the credibility determination.  *See* Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).  Plaintiff bears the burden

of proving that she is disabled.  *See* 20 C.F.R. § 404.1512(a); <u>Moore</u>, 405 F.3d at 1211.  The medical record and the testimony of Plaintiff's activities of daily living do not substantiate Plaintiff's testimony concerning the limitations imposed by her COPD or her other impairments.  Thus, the ALJ did not err in concluding that Plaintiff's subjective statements of disabling symptoms associated with her COPD or any other impairment were not entirely credible or supported by the record.

## IV. Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly applied the law.  Accordingly, the decision of the Commissioner to deny Plaintiff's application for Disability Insurance Benefits and Supplemental Security Income is **AFFIRMED** and the Clerk is **DIRECTED** to enter judgment for the Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on December 19, 2017.


**s/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**